UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim,<br><br>                              Plaintiff,<br><br>v.<br><br>SUITES LP, a California limited partnership dba Homewood Suites by Hilton San Diego-Del Mar,<br><br>                              Defendant. | Case No.: 3:20-cv-01217-H-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RENEWED MOTION TO DISMISS**<br><br>[Doc. Nos. 10-11.] |

      Plaintiff Theresa Brooke ("Plaintiff") filed a complaint on June 30, 2020, alleging Defendant Suites LP ("Defendant") discriminated against her in violation of the Americans with Disabilities Act ("ADA") and California's Unruh Act. (Doc. No. 1.) On August 3, 2020, Defendant filed a motion to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. Nos. 5, 6-1.) On August 16, 2020, Plaintiff

filed a first amended complaint ("FAC") in lieu of responding to the motion to dismiss. (Doc. No. 7.)  The Court subsequently denied Defendant's motion to dismiss as moot. (Doc. No. 9.)

On September 4, 2020, Defendant filed a renewed motion to dismiss Plaintiff's FAC on the same grounds.  (Doc. Nos. 10, 11, 13-1).  Plaintiff filed a response in opposition to Defendant's renewed motion to dismiss on September 17, 2020. (Doc. No. 12.) Defendant did not file a reply.  For the following reasons, the Court grants in part and denies in part Defendant's renewed motion to dismiss the FAC and declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.

## **Background**[1]

Plaintiff alleges that she is mobility impaired and uses a wheelchair. (Doc. No. 7 ¶ 1.) As Plaintiff explains, she and her husband frequently travel to California for leisure, for court-related matters, "and to 'test' whether various hotels . . . comply with disability access laws." (Id. ¶ 7.) According to Plaintiff, in May 2020, she visited Defendant's hotel (the "Hotel") and stopped at what she claims is a "passenger loading zone," which is located directly outside the Hotel's lobby and is allegedly where "persons generally park for a short period while checking in or loading luggage." (Id. ¶¶ 8-9.)

Plaintiff was allegedly unable to access the lobby of the Hotel because, according to her, the loading zone did not have a clearly marked access aisle that complied with Section 503 of the ADA Accessibility Guidelines (the "ADAAG").[2] (Id. ¶ 10.) As Plaintiff contends, an access aisle is necessary to mark a clear path where a customer using a wheelchair should enter the Hotel and to ensure other cars do not park in this location. (Id. ¶¶ 10-11.) Plaintiff allegedly could not access the lobby because two cars were parked where the access aisle should have been marked. (Id. ¶ 10.)

As a result, Plaintiff alleges that she is deterred from returning to the Hotel until

---

[1] The following allegations are taken from Plaintiff's FAC.
[2] ADAAG § 503, available at https://www.access-board.gov/attachments/article/1474/ADA-Standards.pdf (last visited Oct. 18, 2020).

Defendant provides an access aisle that meets the ADAAG's requirements. (Id. ¶¶ 13-14, 16.) Plaintiff alleges that she travels to San Diego frequently for site inspections, early neutral evaluations, and other court-related conferences and hearings. (Id. ¶ 14.) She also claims that she intends to return to San Diego for leisure. (Id. ¶ 13.) She specifically alleges that she would return to the Hotel if it remediates the alleged barrier to her access. (Id.)

Plaintiff's FAC claims that Defendant's failure to provide an access aisle violated her rights under the ADA and the Unruh Act. (Id. ¶ 1.) Defendant argues that dismissal under Rule 12(b)(1) is proper because (1) Plaintiff does not have standing to assert her ADA claim, and (2) the Court, in its discretion, should decline supplemental jurisdiction over her Unruh Act claim. (Doc. No. 13-1 at 3, 16-17.) Defendant also contends that Plaintiff's ADA claim should be dismissed under Rule 12(b)(6) for failing to state a claim. (Id. at 3 n.1.)

## Discussion

### I. Motion to Dismiss Under Rule 12(b)(1)

#### A. Plaintiff's Standing to Assert Her ADA Claim

Defendant asserts that Plaintiff's ADA claim should be dismissed for lack of standing under Rule 12(b)(1). (Doc. No. 13-1 at 4.) Defendant contends that Plaintiff has not pled facts to sufficiently establish that Defendant violated the ADA or otherwise show that she has suffered an injury in fact. (Id.)

#### 1. Standard of Review

A Rule 12(b)(1) motion challenges the Court's subject matter jurisdiction. A federal court does not have subject matter jurisdiction unless the plaintiff demonstrates that she has standing under Article III's case or controversy requirement. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (citing U.S. Const. art. III, § 2 and cases applying it). The plaintiff bears the burden of establishing standing. Id. (citing D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031, 1036 (9th Cir. 2008)). Nonetheless, "[j]urisdictional dismissals in cases premised on federal-question jurisdiction

are exceptional." Sun Valley Gas., Inc. v. Ernst Enters., 711 F.2d 138, 140 (9th Cir.1983). In the ADA context, federal courts must "take a broad view of constitutional standing" because "private enforcement suits 'are the primary method of obtaining compliance.'" Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1039 (9th Cir.2008) (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)).

When a defendant moves to dismiss for want of standing, the challenge may be either facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Here, the Court construes Defendant's challenge as a facial attack on Plaintiff's standing because Defendant asks the Court to apply the facial attack standard of review and challenges Plaintiff's standing based on the sufficiency of her allegations.[3] (See Doc. No. 13-1 at 2-4.) When reviewing a facial attack under Rule 12(b)(1), a court must "assume [the plaintiff's] allegations to be true and draw all reasonable inferences in [the plaintiff's] favor." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004) (citations omitted). However, a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998).

**2. Standing Analysis**

Standing requires the plaintiff demonstrate that (1) she has "suffered an injury in fact" that is (2) "traceable" to the defendant's actions and (3) "can be redressed by a favorable decision." Chapman, 631 F.3d at 946 (citing Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004)). The injury in fact must be "actual or

---

[3] Defendant asks the Court to review its motion as a facial motion and challenges the sufficiency of Plaintiff's pleadings. (See Doc. No. 13-1 at 2-4). Despite Defendant's contention that its challenge is a facial one, however, Defendant also appears to rely in part on extrinsic evidence in making its arguments. (See, e.g., Doc. No. 6-2, Rauch Decl.) Generally, the Court should not consider this evidence when reviewing a facial attack. See Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Where, as here, the plaintiff seeks injunctive relief, the plaintiff must also show a "real and immediate threat of repeated injury." Fortyune, 364 F.3d at 1081. In this case, only the injury in fact element is at issue. Therefore, the Court's standing inquiry will focus on whether Plaintiff alleged facts demonstrating an actual or imminent injury and an immediate threat of repeated injury.

### i. Actual and Imminent Injury

"The existence of federal standing 'often turns on the nature and source of the claim asserted.'" Chapman, 631 F.3d at 947 (quoting Warth v. Seldin, 422 U.S. 490, 500 (1975)). In the ADA context, "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury.'" Doran, 524 F.3d at 1040 (quoting Pickern, 293 F.3d at 1138). "Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element . . . ." Chapman, 631 F.3d at 947.

Defendant's renewed motion to dismiss argues that Plaintiff has not suffered an actual injury because (1) she has not established that Defendant's Hotel was in violation of the ADAAG and, (2) even if there was a violation, Plaintiff has not demonstrated how she was adversely affected by Defendant's noncompliance. (Doc. No. 13-1 at 4-6.) With respect to the former, Defendant argues that the Hotel does not have a passenger loading zone and, therefore, the Hotel need not have an access aisle in compliance with Section 503 of the ADAAG. (Id. at 4.) As Defendant explains, the ADAAG does not require the Hotel to have a passenger loading zone and defines passenger loading zones as "only those areas that are specifically designed or designated for passenger loading." (Id.)

In making these arguments, Defendant relies on extrinsic evidence that the Court generally should not consider at this point in the litigation. Namely, Defendant submitted a declaration from the Hotel's manager containing a photo of the alleged passenger loading

zone. (Doc. No. 6-2, Rauch Decl., Ex. 1.) In the declaration, the Hotel's manager also explained that the alleged passenger loading zone in front of the lobby is not intended to be a passenger loading zone because it has "no signage or design feature" indicating as such. (Id. ¶ 2.) However, at this stage in the litigation, the Court generally may not consider this evidence. See Wolfe, 392 F.3d at 362 (explaining that facial reviews are limited to whether the allegations in the complaint invoke subject matter jurisdiction); Safe Air, 373 F.3d at 1039. Rather, the Court should accept Plaintiff's allegations as true. Wolfe, 392 F.3d at 362. Accordingly, Plaintiff has sufficiently alleged an ADAAG violation.

Defendant also contends that, even if the Hotel's lobby entrance was in violation of Section 503, Plaintiff failed to demonstrate how the violation adversely affected her. (Id. at 6.) Defendant argues that Plaintiff did not allege that she needed an access aisle to enter the Hotel. (Id.) As Defendant explains, Plaintiff "does [n]ot allege that she had any reason to be in the so-called loading zone or that she even attempted to get out of her car. She fails to allege how the purportedly improper loading zone prevented her from accessing the lobby of the hotel." (Id.)

Plaintiff, however, did allege facts demonstrating how the lack of an access aisle adversely affected her. In Plaintiff's FAC, she alleged that the access aisle "is necessary to mark where other cars should not park, thereby creating a clear path to the lobby from the passenger loading zone for a person in a wheelchair." (Doc. No. 7 ¶ 10.) Further, she alleged she was deterred from getting out of her car because, when she arrived at the alleged passenger loading zone, "there were two vehicles located where the access aisle should have been marked," inhibiting her ability to access the lobby.[4] (Id.) Accordingly, Plaintiff satisfied her burden to allege facts indicating that she suffered an actual injury. See Lujan,

---

[4] Defendant contends that the guidelines do not require an access aisle to be marked. (Doc. No. 13-1 at 5.) Yet, Section 503.3.3 of the ADAAG states that access aisles are required "to be marked so as to discourage parking in them." ADAAG § 503.3.3, available at https://www.access-board.gov/attachments/article/1474/ADA-Standards.pdf (last visited Oct. 18, 2020).

504 U.S. at 561 ("At the pleading stage, general allegations of injury resulting from the defendant's conduct may suffice . . . .").

### ii. Real and Immediate Threat of Repeated Injury

Turning to the next requirement, Plaintiff must also demonstrate that there is a "real and immediate threat of repeated injury." Lyons, 461 U.S. at 111.

> [A]n ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier. Alternatively, a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation.

Chapman, 631 F.3d at 950.

Defendant contends that Plaintiff's FAC does not sufficiently allege an intent to return to the Hotel, even if Defendant remediates the alleged access aisle issue. (See Doc. No. 13-1 at 7-16.) Defendant maintains that Plaintiff's allegation of an intent to return is conclusory under the test in Harris v. Del Taco, Inc., 396 F. Supp. 2d 1107, 1113 (C.D. Cal. 2005), which assess standing based on "(1) the proximity of the place of public accommodation to [the] plaintiff's residence, (2) [the] plaintiff's past patronage of defendant's business, (3) the definitiveness of [the] plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant." (Doc. No. 13-1 at 7-11.) Defendant argues, specifically, that Plaintiff does not have standing because she has not alleged that she has stayed at the Hotel in the past, her allegations of an intent to return to the Hotel are not genuine,[5] and she has not alleged that she frequently travels near the Hotel. (Doc. No. 13-1 at 9-11.)

Defendant's arguments under Harris are not persuasive. First, it is important note

---

[5] Defendant also points to Plaintiff's extensive litigation history in this district to show that her intent to return is not bona fide. (See Doc. No. 13-1 at 10-11.) "However, '[i]f [Plaintiff] is going to be disbelieved on the issue of standing, it should be in the context of factfinding, not in the context of [a Rule 12(b)(1) motion].'" Kashl Corp., 362 F. Supp. 3d at 876 (alterations in original) (citation omitted); see also Triple AAA Ass'n for Children with Developmental Disabilities v. Del Taco Inc., No. 06-CV-2199 DMS (WMC), 2007 WL 9776739, at *5 (S.D. Cal. Feb. 26, 2007).

that the factors used in Harris "are not definitive." Kashl Corp., 362 F. Supp. 3d at 874 (citation omitted). Moreover, at least one court in this district has refused to apply these factors when reviewing a facial challenge. See, e.g., Triple AAA, 2007 WL 9776739, at *5 ("[A]ll that is necessary is an alleged intention to patronize the facilities if they were ADA compliant. The sincerity of such allegations may be tested at a later stage of the proceedings, but not at the pleading stage through a facial attack."). Also, "[s]ince this test was first articulated . . . , the Ninth Circuit has not adopted it despite having confronted the same or similar issue repeatedly." Strojnik v. Bakersfield Convention Hotel I, LLC, 436 F. Supp. 3d 1332, 1343 (E.D. Cal. 2020). Even so, while Plaintiff has not alleged that she has stayed at the hotel in the past, she did allege that she travels throughout California frequently, intends to travel to San Diego for leisure and to do ADA testing soon, and is likely to return to San Diego for her court-related conferences and hearings in other cases. (Id. ¶¶ 7, 14.) Accordingly, Plaintiff satisfied her burden to show her intent to return at this juncture. See Triple AAA, 2007 WL 9776739, at *5; see also Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (explaining that, on a facial attack, courts must "[a]ccept[] the plaintiff's allegations as true and draw[] all reasonable inferences in the plaintiff's favor"); Molski v. Arby's Huntington Beach, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005) ("[W]hen the Court is obligated to accept all material allegations as true, general factual assertions of injury and future harm are sufficient.").

Defendant also unsuccessfully contends that Plaintiff has not alleged an intent to return because she failed to state why she prefers the Hotel over others in San Diego. (Doc. No. 13-1 at 15-16.) Although some courts have declined to find an intent to return based upon conclusory allegations that a plaintiff was deterred from visiting a business absent "supporting facts indicating a preference" for that particular business, see, e.g., Strojnik v. Orangewood LLC, No. CV 19-00946 DSF (JCx), 2020 U.S. Dist. LEXIS 11743, at *27-28 (C.D. Cal. Jan. 22, 2020), these cases are not controlling. Rather, an intent to return may be demonstrated "in any number of ways." Harris, 396 F. Supp. 2d at 1115. "[A] special predilection for the service of any particular public accommodation is not

dispositive." Kashl Corp., 362 F. Supp. 3d at 875 (explaining a similar deterrence claim by the plaintiff in the present case was sufficient to survive a factual attack, let alone a facial one). Here, instead of alleging facts indicating why Plaintiff likes the Hotel as compared to others, Plaintiff's allegations are more direct: she alleged that she traveled to the Hotel and was deterred by her lack of access, but "will visit Defendant's hotel if it remediates the barrier at issue." (Doc. No. 7 ¶ 14.) Moreover, as previously explained, Plaintiff also alleged facts from which it may be inferred that she is likely to patron the Hotel and return to San Diego soon. (See id. ¶¶ 7, 14.) Therefore, Plaintiff satisfied her burden to allege an immediate threat of future injury. See Doran, 524 F.3d at 1040; Pickern v. Holiday Quality Foods, Inc., 293 F.3d 1133, 1138 (9th Cir. 2002); see also Lujan, 504 U.S. at 561 ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support a claim.'" (alteration in original) (citation omitted)); cf. Johnson v. DTBA, LLC, 424 F. Supp. 3d 657, 665-66 (N.D. Cal. 2019) (holding standing not met because plaintiff did not allege either "any specific instance[] of deterrence" or that plaintiff "often patronizes [similar accommodations] and would patronize this one but-for the violations"). Consequently, Plaintiff has alleged facts to demonstrate her standing to bring her ADA claim. The Court therefore denies Defendant's renewed motion to dismiss on this basis.

**B.     Supplemental Jurisdiction Over Plaintiff's State Law Claim**

Defendant also asks the Court to decline to exercise supplemental jurisdiction over Plaintiff's state law claim. (Doc. No. 13-1 at 16-18.) Plaintiff's FAC asserts a federal claim for a violation of the ADA as well as a state claim for a violation of California's Unruh Act. (Doc. No. 7.) Plaintiff asserts that the Court has federal question jurisdiction over her ADA claim and supplemental jurisdiction over her Unruh Act claim. (Id. ¶ 3-4.)

Federal courts may exercise supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction if

"(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Id. § 1367(c).  In exercising its discretion, a district court may also consider the "circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims," City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997), as well as the values "of economy, convenience, fairness, and comity" outlined in United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966), Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citations omitted).

Here, Plaintiff's Unruh Act claim substantially predominates over her ADA claim. Both entitle her to injunctive relief; however, only the Unruh Act allows her to recover statutory damages. Brooke v. Crestline Hotels & Resorts LLC., No. 20-cv-301-CAB-AGS, 2020 U.S. Dist. LEXIS 34001, at *3 (S.D. Cal. Feb. 25, 2020).  Thus, Plaintiff's Unruh Act claim "substantially predominate[s] over [her] ADA claim" because her ADA claim "appears to be a secondary claim included to justify filing the complaint in this Court, rather than a necessary (let alone predominant) claim in this lawsuit." Id.; see also Gibbs, 383 U.S. at 726-27 ("[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."); Schutza v. Cuddeback, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) (declining supplemental jurisdiction over Unruh Act claims that substantially predominated over plaintiff's ADA claims); Theroux v. Mar-Con Prods., Inc., No. 19-CV-1810-H-AHG, 2019 WL 6829096, at *3 (S.D. Cal. Dec. 13, 2019) (same); Rutherford v. Ara Lebanese Grill, No. 18-CV-01497-AJB-WVG, 2019 WL 1057919, at *3 (S.D. Cal. Mar. 6, 2019) (same).

Also, compelling interests in comity and deterring forum shopping support declining

jurisdiction over Plaintiff's Unruh Act claim.  "California has a strong interest in protecting its citizens and businesses from abusive litigation and also in preventing its own laws from being misused for unjust purposes."  Crestline Hotels, 2020 U.S. Dist. LEXIS 34001, at *3.  Accordingly, the Unruh Act requires high-frequency litigants, such as Plaintiff,[6] to meet heightened pleading requirements.  Cal. Civ. Proc. Code § 425.50.  Thus, "it would be improper to allow Plaintiff to use the federal court system as a loophole to evade California's pleading requirements."  Rutherford, 2019 WL 1057919, at *5; see also Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest., 406 F. Supp. 2d 1120, 1132 (S.D. Cal. 2005) ("Because a legitimate function of the federal courts is to discourage forum shopping and California courts should interpret California law . . . compelling reasons exist to decline supplemental jurisdiction over plaintiff's state law claims."); Theroux, 2019 WL 6829096, at *4 ("It is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act.").  Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim because it substantially predominates over her federal claim under the ADA and exceptional circumstances favor dismissal, including the Court's interests in comity and discouraging forum-shopping. The Court accordingly grants Defendant's renewed motion to dismiss on this basis.

## II. Motion to Dismiss Under Rule 12(b)(6)

Defendant also moved under Rule 12(b)(6), arguing that Plaintiff failed to state a claim under the ADA.  (Doc. No. 13-1 at 3 n.1.)  Defendant did not separately argue this

---

[6] California imposes heightened pleading requirements for disability-discrimination lawsuits brought by "high-frequency litigants," defined as, *inter alia*, "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation." See Cal. Civ. Proc. Code §§ 425.50(a)(4)(A), 425.55(b)(1).  Plaintiff has filed over 40 disability discrimination cases in the past year in the Southern District of California alone.  Thus, Plaintiff is a high-frequency litigant for the purposes of California's Unruh Act.

motion. Rather, Defendant, in a footnote, stated that "[f]or the same reasons that [Plaintiff] lacks standing, she also fails to state a claim." (Id.)

### A. Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and "enough facts to state a claim to relief that is plausible on its face," Fed. R. Civ. P. 12(b)(6); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must assume the plaintiff's factual allegations as true and construe all reasonable inferences in favor of the plaintiff. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

### B. Whether Plaintiff Adequately States an ADA Claim

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." Ariz. ex rel. Goddard v. Harkins Amusement Enters., 603 F.3d 666, 670 (9th Cir. 2010).

Here, Plaintiff sufficiently pleads a claim under the ADA. First, Plaintiff alleges that she is legally disabled pursuant to 42 U.S.C. § 12102 because she only has one leg and requires the use of a wheelchair. (Doc. No. 7 ¶ 1.) Second, Plaintiff alleges that Defendant

is a hotel that operates as a public accommodation within the meaning of 42 U.S.C. § 12181. (Id. ¶ 2.) Defendant does not dispute either of these allegations. Third, Plaintiff claims that she was unable to access the Hotel because its alleged passenger loading zone did not have a clearly marked access aisle to indicate where other cars should not park and, when she arrived at the Hotel, "[t]here were two vehicles located where the access aisle should have been marked." (Id. ¶¶ 9-11.) Although Defendant disputes whether its facilities require an access aisle in the first place and whether Plaintiff was genuinely precluded from entering the lobby, (Doc. No. 13-1 at 4-7), these contentions are factual, and the Court must construe all factual inferences in Plaintiff's favor, see Cahill, 80 F.3d at 337-38; Hal Roach Studios, 896 F.2d at 1555 n.19. Defendant's arguments are better suited for resolution when the record is more developed. Accordingly, the Court denies Defendant's renewed motion to dismiss on this basis.

## Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendant's renewed motion to dismiss. The Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.

**IT IS SO ORDERED.**

DATED: October 19, 2020

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT